IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MUBARAK ALEXANDER, | : | |
|    Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 21-CV-4633-KSM |
| | : | |
| BUCKS COUNTY, *et al.*, | : | |
|    Defendants. | : | |

## MEMORANDUM

**MARSTON J.**                                                                                                                       August 14, 2023

      Plaintiff Mubarak Alexander brings civil rights claims against Bucks County, seven correctional officers (the "Officer Defendants")[1] at the Bucks County Correctional Facility ("BCCF"), Nurse Kristen Hill (a nurse at BCCF), and Warden Paul Lagana (the warden of BCCF). (Doc. No. 56.) Alexander claims that while he was a pretrial detainee and on suicide watch at BCCF, the Officer Defendants handcuffed him, covered his face with a towel, placed him in a restraint chair—a chair that allows officers to strap down a detainee's arms and legs so that he cannot move—and as a group, punched, kicked, elbowed, and kneed Alexander, causing severe pain and multiple injuries. (*Id.* ¶¶ 16, 20–35.) Alexander also alleges that after the assault, Nurse Hill denied him medical treatment, and Warden Lagana interfered with the grievance process. (*Id.* at ¶¶ 48, 49, 53, 55–56.) Alexander brings five counts under 42 U.S.C. § 1983 for violations of his Fourteenth Amendment rights. (*Id.* at 16–25.)

      The parties have exchanged initial discovery requests. Of note, Alexander seeks copies of any video recordings depicting the alleged assault. Bucks County and several Officer

---

[1] The seven Officer Defendants are Sergeant Gregory Vingless, Sergeant Matthew Hartman, Officer Jeffery Long, Officer Timothy Moran, Officer Jacob Stark, Officer Alex Perez, and Officer George Simpson.

Defendants have moved for a protective order ensuring the video footage remains confidential and will be used only for purposes of this litigation. (*See* Doc. No. 90.) Alexander opposes that motion. (Doc. No. 96.) At the Court's direction, Defendants submitted the recordings to the Court for *in camera* review. For the reasons discussed below, the motion is granted with one alteration to the proposed protective order.

I.

Under Rule 26(c), the Court may, for good cause, issue a protective order "to shield a party from annoyance, embarrassment, oppression, or undue burden or expense" during discovery. Fed. R. Civ. P. 26(c)(1); *see also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). "A protective order is intended to offer litigants a measure of privacy, while balancing against this privacy interest the public's right to obtain information concerning judicial proceedings." *In re Avandia Mktg. Sales Pracs. & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (quotation marks omitted); *see also McKenna v. City of Philadelphia*, No. Civ.A. 98-5835, 2000 WL1521604, at *1 (E.D. Pa. Sept. 29, 2000) ("Whether th[e] disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public."). The "party seeking a protective order over discovery material must demonstrate that good cause exists for the order." *In re Avandia*, 924 F.3d at 671. "Good cause means that disclosure will work a clearly defined and serious injury to the party seeking closure," and the injury "must be shown with specificity." *Id*. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not support a good cause showing." *Pansy*, 23 F.3d at 786.

In determining whether good cause exists, courts in this Circuit consider the following factors, which are "neither mandatory nor exhaustive": (1) whether the disclosure will violate

2

any privacy interests; (2) whether disclosure of the information will cause a party embarrassment; (3) whether the information is being sought for a legitimate purpose or for an improper purpose; (4) whether the sharing of information among the litigants will promote fairness and efficiency; (5) whether confidentiality is being sought over information important to public health and safety; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *In re Avandia*, 924 F.3d at 671–72.

II.

In this case, the most important factor is the first: whether unfettered disclosure of the videos will violate Defendants' interest in keeping them private. To their motion, Defendants attach the affidavit of David Kratz, Director of the Bucks County Department of Corrections ("DOC"), who has "19 years' experience in the DOC." (*See* Doc. No. 90-1.) Director Kratz attests that "inmates and others" could use the videos to "determine areas within the prison that are vulnerable to breaches," allowing "inmates and staff to perform illicit activities in blind spots." (*Id.* at ¶ 10.) In addition, the videos depict the correctional officers' "procedures for cell entries and cell extractions," along with their "specific uniforms, tools, and personal protective equipment." (*Id.* at ¶ 8.) Director Kratz states that if this information is publicly available "offenders"[2] could use the information to "facilitate security breaches, including attacks upon other offenders, staff, providers, or the public." (*Id.* at ¶ 12.) For this reason, he opines that "disclosure of the [ ] videos to the public would create an undue and improper risk to the personal safety of staff, providers, and offenders at the DOC and would threaten the safety and

---

[2] Director Kratz repeatedly refers to "offenders" in his affidavit. Like Alexander, we presume that he uses the term to refer to "persons confined within BCCF, including those who . . . are pre-trial detainees who have not been adjudicated guilty of any crime for which they are being detained." (*See* Doc. No. 96 at 1 n.1.)

3

security of the BCCF." (*Id.* at ¶ 13.)[3]

After reviewing the videos and Director Kratz's affidavit, the Court agrees that BCCF has a substantial privacy and security interest in maintaining the confidentiality of the video footage, such that the first factor strongly favors limiting public disclosure. *See Palmer v. York County*, Civil No. 1:20-CV-539, 2022 WL 4120261, at *4 (M.D. Pa. Sept. 9, 2022) ("[W]hile the plaintiff has been provided access to prison surveillance videos, presently those videos—which would also reveal the location and capabilities of prison surveillance cameras—contain 'information which could compromise the security and safety of the institution for inmates, visitors and staff.' Therefore, during the discovery phase of this litigation, good cause exists to continue to designate this information as confidential. (internal citations omitted)); *cf. Kearney v. Bayside State Prison Admin.*, Civil Action No. 17-06269-KMW-SAK, 2023 WL 2207392, at *2 (D.N.J. Feb. 23, 2023) (sealing prison videos submitted as trial exhibits because "'if made public, the information on these videos could be used by individuals to engage in unlawful and dangerous conduct, against guards, prison staff, and other inmates. . . . Indeed, other courts have concluded that releasing sensitive, security related information about the internal workings of a prison

---

[3] Alexander takes issue with Defendants' security arguments, responding that BCCF has not shown that the videos are likely to constitute a security threat with the necessary specificity. (*See* Doc. No. 96 at 14–15 (arguing that Defendants use "'could' language—including harms arising from 'knowledge' which 'could' be obtained" and that this "is precisely the type of '[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning' which the Third Circuit explained 'do not satisfy the Rule 26(c) test'" (citation omitted)). The Court disagrees. BCCF is not required to show that similar footage released in the past resulted in a security breach at its facility. It is enough that they have specifically identified the risks—which include improper use of the footage to understand the prison's layout, the guards' response tactics, and camera blind spots—and submitted an affidavit from the Director of the County's DOC, who attests that BCCF's security concerns are legitimate and reasonable. *See In re Avandia*, 924 F.3d at 671 ("[B]road allegations of harm, unsubstantiated by specific examples *or articulated reasoning*, do not support a good cause showing." (cleaned up) (emphasis added)); *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) ("[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples *or articulated reasoning*, do not satisfy the Rule 26(c) test." (emphasis added)).

creates a risk of danger to correction officers and other inmates" (collecting cases)); *Milhouse v. Heath*, Civil Action No. 1:15-CV-01400, 2022 WL 18046706, at *2 (M.D. Pa. May 6, 2022) (finding "good cause to seal" prison investigative reports because the reports "contain information that raises significant privacy and security concerns regarding the Bureau of Prison's investigatory processes, the operation of federal prisons, and the inmates' safety").[4]

The remaining factors do not outweigh the first. The second and third factors are neutral. Neither party argues that public disclosure of the videos is likely to cause embarrassment or that the videos—which are highly relevant to the claims in this case—are being sought for an improper purpose. The fourth factor weighs in favor of the protective order because the protective order strikes a necessary balance of allowing the litigants to share information pivotal to this lawsuit, while accounting for the prison's legitimate security concerns.

The remaining three factors address the public's interest in the videos, and each factor weighs against limiting disclosure of the videos. Defendants are a municipality and correctional officers at a county prison. *See In re Avandia*, 924 F.3d at 671–72 (explaining that the sixth factor looks to "whether a party benefitting from the order of confidentiality is a public entity or official"); *see also Pansy*, 23 F.3d at 786 ("The public's interest is particularly legitimate and

---

[4] District courts in other Circuits have similarly found that prison video footage is entitled to protection. *See e.g.*, *McMillen v. Windham*, Civil Action No. 3:16-CV-558-CRS, 2018 WL 652829, at *4 (W.D. Ken. Jan. 30, 2018) ("The Court is concerned about the possible repercussions for the safety of facility staff, potential future detainees, and the public if it were to 'interfere in matters which affect' jail or prison security and safety concerns. Were the use of the security camera footage available for public consumption, it would be relatively simple for an enterprising person to discover blind spots in the cameras' range or to otherwise exploit the camera footage for their own purposes, especially in light of the fact that the Kentucky State Police agreed to accept the Lincoln Village property in its 'as-is' condition. Accordingly, the Court will grant the motion for protective order." (internal citations omitted)); *Harris v. Livingston County*, 14-CV-6260-DGL-JWF, 2018 WL 6566613, at *2–3 (W.D.N.Y. Dec. 13, 2018) ("Defendants assert that allowing the dissemination of the video surveillance footage would put at risk the safety of corrections officers, other inmates, and the public. . . . [T]he court finds that there is good cause for a protective order preventing plaintiff disseminating the surveillance footage.").

important where, as in this case, at least one of the parties to the action is a public entity or official."). And the videos show those public officials using force to restrain an inmate with a mental illness, an issue that is likely of great importance to the public.[5] *See In re Avandia*, 924 F.3d at 671–72 (explaining that the fifth factor looks to "whether confidentiality is being sought over information important to public health and safety" and the seventh factor considers "whether the case involves issues important to the public"). That said, the public also has an interest in maintaining security and safety at BCCF, a fact which weighs against public unfettered disclosure of the videos. *Cf. McKenna*, 2000 WL 1521604, at *2 (The public has a "wide-reaching interest in maintaining the confidentiality of these documents that involves protecting people who provide information to investigators and protecting the investigative process, itself. . . . With such heavy interests of the public at issue, the court will not require disclosure of these documents" including records and witness statements collected by the City's Internal Affairs Department "absent a confidentiality agreement.").

Despite the public's interest in unfettered access to the videos, on balance, the Court finds that Defendants' substantial security concerns outweigh the public's interest in disclosure at this early stage of the litigation. Defendants have demonstrated good cause for a protective order.[6]

---

[5] Alexander emphasizes that media organizations have expressed an interest in the "general issue" of "the treatment of mentally ill inmates at BCCF," and also, in the specific incident at issue here. (Doc. No. 96 at 16–17.)

[6] Because Bucks County is a party to this suit, the Court must also consider the effect the protective order will have on the County's obligations under Pennsylvania's Right to Know Law (the "RTKL"). *Pansy*, 23 F.3d at 791 (recognizing this is "another factor which must be considered in the good cause balancing test"). In *Pansy*, the Third Circuit held that "where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law." *Id.* As Defendants point out in their reply brief, Pennsylvania Courts of Common Pleas have "held that [use of force] materials," like the videos here, "are exempt from public disclosure" under the RTKL. (Doc. No. 97 at 8; *see also* Doc. No. 97-1 at 21–23 (*County of Bucks v. Sholtis*, No. 2020-05950, Decision (Pa. Ct. Comm. Pl. Apr. 4, 2022) (finding that a similar video qualified for the "security-related exemptions" in the RTKL and therefore, was "not a public

The Court will, however, strike the following language from the protective order proposed by Defendants: "The records protected under this Order shall be filed under seal." (*See* Doc. No. 90-2 at 3.) It is replaced with the following:

> This Order does not, by itself, authorize the filing of any video under seal. Any party wishing to file a video protected by this Order in connection with a motion, brief or other submission to the Court must first meet and confer with opposing counsel about whether any party will request that the protected video(s) be filed under seal. Any party seeking a sealing order must request one by motion to the Court. No party shall file a video protected by this Order on the public docket absent the consent of all parties or further order from the Court.

*See Palmer*, 2022 WL 4120261, at *5 (finding good cause for maintaining confidentiality of prison videos during the discovery phase of litigation but warning "that as this case moves from discovery proceedings to trial, the burden of maintaining continued confidentiality of evidence which will be presented at trial is heightened, and courts demand a more exacting justification for treating trial evidence as confidential and not subject to public disclosure").

### III.

Defendants' motion for a protective order is granted with one alteration to the proposed protective order. An appropriate order follows.

---

record subject to disclosure").) Accordingly, this case is not one where the protective order is likely to "frustrate, if not render useless, federal and state freedom of information laws." *Pansy*, 23 F.3d at 791. Alexander notes that "[a]t least one journalist has already submitted a Right to Know request to Bucks County for the . . . incident report (submitted February 21, 2022)" in this case." (Doc. No. 96 at 17.) If any court later rules that the videos at issue here are available under the RTKL, Alexander may move for reconsideration of the Court's ruling here. *See Pansy*, 23 F.3d at 791 ("To avoid complicated inquiries as to whether certain information would in fact be available under a freedom of information law, courts may choose to grant conditional orders. For example, a court could order that the order of confidentiality will become inoperative if the information it orders confidential is later determined to be available under a freedom of information law. Or a court could grant an order of confidentiality while specifying that the scope of the confidentiality order does not extend so as to prevent disclosure pursuant to any freedom of information law. Courts have discretion to fashion such orders according to the needs and circumstances of each case.").